### JACOBS PHARMACY CO. v. CITY OF ATLANTA.

(Circuit Court, N. D. Georgia. September 16, 1898.)

1. INTOXICATING LIQUORS—MUNICIPAL REGULATIONS OF SALE—POLICE POWER.
   The city of Atlanta being given by its charter full power and authority to regulate the sale of intoxicating liquors both at wholesale and retail, an ordinance prohibiting the sale of liquors "at wholesale or retail in connection with drugs or in drug stores" is a legitimate exercise of the police power so conferred, and the limiting of the prohibition to the particular manner or place of sale stated is within the municipal discretion.

2. SAME—INTERFERENCE WITH INTERSTATE COMMERCE.
   Such an ordinance, as applied to a wholesale dealer who sells to customers in other states, is not an interference with interstate commerce, as it prohibits such sales only "in connection with drugs."

3. SAME—CONSTITUTIONAL LAW—PRIVILEGES AND IMMUNITIES.
   The right to sell intoxicating liquors is not one of the privileges. and immunities in which citizens are protected by the fourteenth amendment to the constitution.

This is a suit in equity to enjoin the enforcement of an ordinance of the city of Atlanta relating to the sale of liquor.

King & Spalding, for complainant.

James A. Anderson and J. T. Pendleton, for defendant.

NEWMAN, District Judge. Complainant alleges that it is a wholesale and retail dealer in drugs in the city of Atlanta; that, in con-

nection with its said business, it has carried on for many years a traffic, both within and without the state of Georgia, in wines and liquors, selling the same in quantities of not less than one quart; that it has always complied with the laws of the city and state in connection with such traffic; that it has always taken out and paid the licenses required of it; that it has on hand at present a large stock of wines and liquors; that a large part of its business has been to sell wines and liquors to parties outside of the state of Georgia; that it conducts a large interstate business in Georgia and other states of the United States in wines and spirituous liquors; that there is no law of the state of Georgia prohibiting the carrying on the business of trading in wines and spirituous liquors between parties located in the county of Fulton, said state, and others of the United States, nor has the state of Georgia, so far as the county of Fulton and city of Atlanta is concerned, undertaken to prohibit the carrying on of interstate commerce in wines and spirituous liquors. It shows that recently the city of Atlanta has passed an ordinance, one section of which is as follows:

"Sec. 5. Be it further ordained by the authority aforesaid that it shall be unlawful to sell liquors at wholesale or retail in connection with drugs or in drug stores: provided that the compounding of liquors with drugs as parts of prescriptions, bona fide, made by reputable physicians in the treatment of disease, shall not constitute a violation of this ordinance."

Complainant then proceeds by his bill to attack this ordinance as being a violation of the fourteenth amendment of the constitution of the United States, in that it abridges its privileges and immunities as a citizen of the United States, and denies to it the equal protection of the laws, and that said ordinance is void, in that it operates as a regulation and restriction upon interstate commerce. Considerable attention is given in the bill to the methods by which the adoption of this ordinance was brought about. It is claimed that it was enacted at the instance of the Liquor Dealers' Association and in its interests. The city, in its answer, denies that the mayor and general council were actuated by any improper motive in passing this ordinance, and says that the same was done in the exercise of its police powers and in the public interests. The city especially sets up the fact that as druggists are allowed to keep their places of business open on Sundays, election days, holidays, and late at night, when regular liquor dealers are closed, it gives them opportunities for furnishing intoxicants and of violating the law which regular liquor dealers do not have. It further sets up the fact that evil has resulted from allowing liquor to be sold in connection with drugs, and that many prosecutions have followed.

The real question for determination is as to whether or not the section of the ordinance above quoted is a proper exercise of the police power vested by law in the mayor and general council of the city of Atlanta. The general power to regulate the sale of intoxicating liquors, and to fix the time, place, and manner of such sale, is not questioned. The city of Atlanta has this power given it by its charter, both as to the retail and wholesale handling of liquor. By the act of

1874 (section 27, City Code 1891), legislative authority is given as follows:

"Sec. 27. They shall have full power and authority to regulate the retail of ardent spirits within the corporate limits of said city, and at their discretion to issue license to retail, or to withhold the same, and to fix the price to be paid for license at any sum they may think proper, not exceeding two thousand dollars."

The act of 1889 (section 285, City Code 1891) is as follows:

"Sec. 285. Be it further enacted, that the mayor and general council of said city shall have the power and authority to regulate the sale of liquors at wholesale in said city."

The contention of complainant is that it is unlawfully discriminated against, and that the fourteenth amendment of the constitution of the United States is violated, in that the inhibition is directed against druggists alone, whereas liquors can be sold in connection with any other business. The state has granted to the municipal authorities of the city of Atlanta power to regulate the sale of liquor. This grant of power should not be construed narrowly. It should be given at least sufficiently liberal construction to accomplish the object of the grant. The object, of course, is to put into the hands of the city authorities sufficient power to control, in the interest of the public and in the interest of good order and morals, the sale of intoxicants within the city limits. This power to regulate carries with it the power to grant the privilege of selling, or to allow such privilege in a restricted or modified form, or to withhold it entirely. The discretion as to the best method of controlling the sale of liquors is with the governing body of the city. How far this discrimination must go to become a mere arbitrary preference, such as would justify the court in interfering with the city's action in controlling this class of business, it is unnecessary now to determine. Sufficient it is to say that no such case is made here. Whether it is a wise ordinance or not is not for determination. The question is, is it a legal ordinance, according to the test we are applying? It seems to come within the proper and legitimate scope of the city's power to regulate the sale of liquor, and it is not the province of the court to interfere with its action.

So far as the question is made that it invades the privileges and immunities of a citizen of the United States, it has been held that the right to sell intoxicating liquors is not one of the privileges and immunities of a citizen of the United States. In Bartemeyer v. Iowa, 18 Wall. 129, it is said:

"The right to sell intoxicating liquors is not one of the privileges and immunities of a citizen of the United States which by that amendment the states were forbidden to abridge."

To the same effect, see In re Hoover, 30 Fed. 51; U. S. v. Ronan, 33 Fed. 117. In the decision in the latter case by Circuit Judge Pardee he says:

"Then there can be no doubt about the power of the state to authorize the granting of licenses to sell intoxicating liquors, and to determine the conditions upon which the person to whom, and by what officials, the licenses may be granted. Under a license system, as distinguished from a

tax system, there must be some authority to determine upon the fitness of applicants, and as to the compliance with required conditions; and in the matter of selling liquor there ought to be some authority with power to limit the number, and control the location, of the places where sales shall be authorized. This power needs to be discretionary, but at the same time final and conclusive. In the law attacked, this power is vested in the court of county commissioners, and, in the counties where no such court exists, in the ordinary of the county. It can only be said to be arbitrary in the sense that it is not reviewable by any other court. It is difficult to see in this any denial to the relator of the equal protection of the laws."

There is nothing whatever in this ordinance, however, to prevent complainant from selling all its liquors in any way it chooses, so long as it does not keep and sell them in connection with the drug business. Only one restriction is put upon it by this ordinance, and that is it must not sell its liquors in connection with drugs. Believing this ordinance to be a legitimate exercise of the power granted the city of Atlanta to regulate the sale of intoxicating liquors, I cannot hold that it invades the rights of complainant under the fourteenth constitutional amendment.

So far as it is contended that this ordinance interferes with interstate commerce, it is only necessary to repeat that there is not the slightest interference with complainant selling its liquors, the only restriction being not to sell them in connection with drugs. Under none of the authorities does this local regulation of the manner of keeping and selling liquors violate the interstate commerce clause of the constitution of the United States. Mugler v. State of Kansas, 123 U. S. 623, 8 Sup. Ct. 273; Kidd v. Pearson, 128 U. S. 1, 9 Sup. Ct. 6; and the cases cited in those two decisions.

An order will be entered denying the injunction and dissolving the temporary restraining order.