6 P.3d 1256 (2000)
Annette LUNDE, Appellant (Petitioner),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Respondent).
No. 99-281.
Supreme Court of Wyoming.
June 7, 2000.
*1257 Representing Appellant: Stephenson D. Emery of Williams, Porter, Day & Neville, P.C., Casper, Wyoming. Argument presented by Mr. Emery.
Representing Appellee: Gay Woodhouse, Attorney General; John W. Renneisen, Deputy Attorney General; and Bernard P. Haggerty, Senior Assistant Attorney General. Argument presented by Mr. Haggerty.
Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.
HILL, Justice.
Appellant, Annette Lunde (Lunde), seeks review of the district court's order affirming an order denying benefits issued by a hearing examiner, after a hearing into Lunde's claim for additional worker's compensation benefits. The hearing examiner concluded that Lunde had failed to meet her burden of proof to demonstrate that, because of her work-related injury, she was unable to return to employment at a comparable or higher wage than the wage she was earning at the time of her injury. We affirm.

ISSUES
Lunde advances these issues:
A. Whether the Office of Administrative Hearings ("Office") erred as a matter of *1258 law in denying Annette Lunde ("Appellant") an award of loss of earnings benefits by concluding that, for purposes of Wyo. Stat. XX-XX-XXX(h)(i), her pre-injury wage was comparable to a post-injury potential wage.
B. Whether the Office erred as a matter of law in denying appellant an award of loss of earnings benefits by refusing to consider what appellant would have earned if she had been able to continue her employment as a convenience store manager, the difference due to inflation between 1988 and 1997 wages, and the difference in cost of living and in wages between Sweetwater County, Wyoming in 1988 and Southern California in 1997 in deciding what is a "comparable wage" as that term is used in Wyo. Stat. § 27-14-405(h)(i).
Appellee, the Wyoming Workers' Compensation Division (Division) provides this restatement of the issues:
I. Is the availability of permanent partial disability benefits a mixed question of law and fact?
II. Were the Hearing Examiner's findings of basic fact supported by substantial evidence?
III. Did the Hearing Examiner properly apply the permanent partial disability statute?

FACTS
Lunde began working for a "Maverick Convenience Store" in Rock Springs in April of 1979 and was continuously employed there until an on-the-job injury made it impossible for her to continue that work. On September 6, 1988, while in the course and scope of her employment,[1] Lunde was bitten by a brown recluse spider, and the medical consequences of that event have left her disabled. Lunde did receive worker's compensation benefits for her injury. Because she was physically unable to return to work, Lunde's employment with Maverick Stores was terminated. She was treated for her injury in Wyoming for about one year and then moved to California in August of 1989 to live with her mother. She has received additional medical care there in the intervening years. Lunde has not been employed for any significant period of time since her injury and, at the time of the hearing, was receiving disability benefits from the Social Security Administration on the basis that she was disabled.[2]
Lunde was earning $7.34 per hour at the time of her injury, and the conclusion of the vocational evaluation was that she could presently earn $7.25 per hour.

STANDARD OF REVIEW
Our standard of review in a case such as this is well-established:
A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence in the contested case hearing. Martinez v. State ex rel. Wyoming Workers' Compensation Div., 917 P.2d 619, 621 (Wyo.1996). When an agency decides that the party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" language of WYO. STAT. § 16-3-114(c)(ii) (1990). City of Casper v. Utech, 895 P.2d 449, 452 (Wyo.1995). On appeal the complainant, Pederson in this instance, has the burden of proving arbitrary administrative action. Knight v. Environmental *1259 Quality Council of State of Wyo., 805 P.2d 268 (Wyo.1991); Wyoming Bancorporation v. Bonham, 527 P.2d 432, 439 (Wyo. 1974); Marathon Oil Co. v. Welch, 379 P.2d 832, 836 (Wyo.1963); Whitesides v. Council of City of Cheyenne, 78 Wyo. 80, 319 P.2d 520, 526 (1957). The agency, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. Utech, 895 P.2d at 451, and cases there cited. The deference normally accorded to the findings of fact by a trial court is extended to the administrative agency, and the agency's decision as to the facts will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. Wyoming Steel & Fab, Inc. v. Robles, 882 P.2d 873, 875 (Wyo.1994). Demonstrating evidentiary contradictions in the record does not establish the irrationality of the ruling, but we do examine conflicting evidence to determine if the agency reasonably could have made its finding and order based upon all of the evidence before it. Matter of Corman, 909 P.2d 966, 971 (Wyo.1996); Knight, 805 P.2d at 274; Ward v. Board of Trustees of Goshen County School Dist. No. 1, 865 P.2d 618, 623 (Wyo.1993); State ex rel. Wyoming Workers' Compensation Div. v. Ramsey, 839 P.2d 936, 941 (Wyo. 1992).
Claim of Pederson, 939 P.2d 740, 742 (Wyo. 1997); Erdman v. State ex rel. Wyoming Workers' and Safety Compensation Division, 5 P.3d 64, 65-66 (Wyo.2000).

DISCUSSION
Of the greatest significance for purposes of this appeal is Lunde's contention that there were, for all intents and purposes, very few, if any, jobs available that she could perform given the limitations created by her injury. Continuing, she asserts that, in any event, the jobs utilized in the process of determining her current wage earning ability were definitely not jobs she could physically perform, and that several of the jobs used to calculate her wage earning ability were not available or she did not meet the essential qualifications for the jobs. There is no dispute that her attending physician described her occupational limitations as follows:
A sedentary job should be appropriate if it could be met with the following restrictions. Standing requirements of less than 15 minutes at a time and an intermittent 10 minute break for rest and elevation [of her leg]. Sitting should be limited to less than 45 minutes if the leg is not elevated or less than two hours if she is permitted to elevate it. She should be able to avoid more than one flight of stairs and not be required to lift or carry more than five pounds.
Although there is clearly an apparent divergence between the attending physician's view of Lunde's occupational capabilities and the disability determination made by the Social Security Administration, the evidence presented by Lunde does not aid us in resolving that seeming contradiction.
Counterpoised to Lunde's contentions is a vocational evaluation. which was performed at the request of the Division and which identified several general types of work that Lunde could perform despite her disability. The burden of proof Lunde was required to meet is set out in Wyo. Stat. Ann. § 27-14-405(h)(i) (LEXIS 1999):
(h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:
(i) the injured employee is because of the injury, unable to return to employment at a comparable or higher wage than the wage the employee was earning at the time of injury[.]
Wyo. Stat. Ann. § 27-14-405(j) sets out a formula for calculating an award of benefits under § 27-14-405(h), if one is due. In Lunde's case, the Division determined that her capacity to earn $7.25 an hour was "comparable" to her $7.34 per hour earnings at the time of her injury and, therefore, she was not entitled to any additional benefits.
Lunde argues that the vocational evaluation is flawed in many respects, and that the hearing examiner's conclusions relied almost entirely upon that vocational evaluation. Hence, the decision to deny benefits is arbitrary, *1260 capricious, an abuse of discretion, not supported by substantial evidence, or otherwise unlawful. Lunde contends that the hearing examiner should have considered inflation over the years 1988-1998, the higher cost of living in California, overtime pay that she had historically earned at Maverick, and the likelihood that she would be making about $12.50 per hour now, if she had been able to continue her career with Maverick Stores.
We agree with the Division that the statute does not authorize nor permit the hearing examiner to consider those factors. Lunde's argument certainly has considerable logical appeal, but the statute does not provide for it, and Lunde has cited no pertinent authority nor presented cogent argument that could sustain such a holding by this Court. We find no error in this regard.
However, we must, in the same breath, note the incongruity of the vocational evaluation with respect to these matters. The Division is resolute in its position that time and geography (inflation, relative cost of living, etc.) can play no role in calculating an award such as that sought by Lunde. Yet, the vocational evaluation was prepared in San Diego, California, by an employee of CRA Managed Care, Inc., and all of the information about jobs that were potentially available to Lunde are located in that geographical area.
The evaluation presumed that the severely disabled Lunde could be hired for any one of several jobs listed in the evaluation at the mid-point of the salary range listed for those jobs. For example, for the job at the Union Bank of America (which required standing largely throughout the shift and the lifting of boxes of coins) the salary range was $6-$7 per hour (6 + 7 = 13; divided by 2 = $6.50 per hour). Six of the nine jobs listed in the evaluation paid in the $6-$7 per hour range. One job was listed at $6.00 per hour (that job, working for Avis car rental as a sales agent, required "twisting, stooping, starting, and cleaning cars"). Another job, working in customer service for Enterprise Rent-A-Car (which required collegeAA, BA preferred),[3] paid $2,200 per month (approximately $11.50 per hour). One bank teller job (which required standing, some stools, more sales oriented requiring greeting) paid $7.50-$10 per hour (7.50 + 10 = 17.50, divided by 2 = $8.75). Of the nine jobs listed, only four noted current or pending vacancies.
The statute requires that the loss of earning capacity be based on what Lunde earned in Wyoming at the time of her injury. Likewise, if the Division is going to rely on a vocational evaluation to demonstrate current earning capacity, then that should be based on available jobs in Wyoming. In this case, as would be the case with any disabled worker, the jobs used in such an evaluation must be conducted with some basis in reality which gives recognition to the worker's disability. Lunde's contention that she was probably unable to perform most, if not all, of the jobs used in the evaluationnot to mention that she did not appear to qualify for many of themis intuitively obvious even to the most casual observer. For these reasons we conclude that the vocational evaluation offered by the Division was of no evidentiary value in resolving this case and should not have been considered by the hearing examiner.
However unavailing the evidence offered by the Division might have been, the burden of proof still rested on Lunde's shoulders. Her testimony was anecdotal, self-serving, in part based on an informal conversation with one employee in a single convenience store in California, was not supported by documentary evidence, affidavits, reports, or other reliable sources of information, and demonstrated that she was able to work periodically (but without any substantial showing that there was good reason that she was not able to work more than periodically, except for those periods when she was undergoing medical treatment procedures). Although a broad range of informal evidence, including hearsay, is admissible in a worker's compensation hearing, any offered evidence must be probative, trustworthy, and credible. Clark v. Workers' Safety, Compensation Division, 968 P.2d 436, 439 (Wyo.1998); *1261 Wyo. Stat. Ann. § 16-3-108(a) (LEXIS 1999). Upon careful examination of all evidence in the record offered by Lunde, and leaving out of consideration the vocational evaluation for which the Division paid, we are compelled to conclude that Lunde did not meet the burden of proof placed on her by the governing statute. Thus, we hold that the ultimate conclusion of the hearing examiner must be affirmed.
Because of this disposition, we need not further consider our holding in Adams v. State ex rel. Wyoming Workers' Safety and Compensation Division, 975 P.2d 17 (Wyo. 1999). There, we held that "comparable," as used in § 27-14-405(h)(i), meant "substantially equal" or "equivalent," and wages are only "comparable" if the difference between them is insignificant. Id., 975 P.2d at 20. We are unable to apply that standard here because Lunde has failed to present evidence which would provide the raw materials for such a comparison to be made.[4]
Lunde also asks that we consider her case in light of Claim of Nielsen, 806 P.2d 297 (Wyo.1991). We have reviewed Nielsen, a permanent total disability case determined under Wyo. Stat. Ann. § 27-14-403 (LEXIS 1999), and conclude that the holding of that case does not apply to the circumstances presented by Lunde's case.
For these reasons, the order of the district court affirming the determination of the hearing examiner's denial of benefit is affirmed.
NOTES
[1] As manager of the store, Lunde performed a wide range of tasks associated with management of that business enterprise. In this instance, it was necessary for her to enter into a crawl space beneath the store in order to attach a drain to a soft drink dispensing machine. During the course of that task, she was bitten by a brown recluse spider.
[2] 20 C.F.R. § 404.1505 (1999) provides:

(a) The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment [which] can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. To meet this definition, you must have a severe impairment, which makes you unable to do your previous work or any other substantial gainful activity which exists in the national economy. To determine whether you are able to do any other work, we consider your residual functional capacity and your age, education, and work experience.
[3] Lunde had neither an AA or BA degree.
[4] Effective July 1, 2000, Wyo. Stat. Ann. § 27-14-405(h)(i) has been amended to read:

(i) The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury;
Enrolled Act No. 32, Senate, 2000 Budget Session.